IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**FILED**
**U.S. District Court**
**District of Kansas**
07/23/2026
**Clerk, U.S. District Court**
**By:** SND **Deputy Clerk**

DONDRE DE ANTHONY FOSTER,          )
                                   )
                    Petitioner,    )
                                   )
         v.                        )          Case No. 26-3175-JWL
                                   )
MISTY MACKEY, Warden,              )
    Midwest Regional Reception Center; )
SAMUEL OLSON, ICE Field Office Director; )
DAVID J. VENTURELLA, ICE Acting Director; )
MARKWAYNE MULLIN, DHS Secretary; and )
TODD BLANCHE, Acting Attorney General, )
                                   )
                    Respondents.   )
                                   )
_____ )

## MEMORANDUM AND ORDER

Petitioner, through counsel, filed a petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges his detention by immigration officials. For the reasons set forth below, the Court **denies** the petition.

### I.    Procedural History

Petitioner, a native of Jamacia, was admitted to the United States in 2014 as a lawful permanent resident. Petitioner was convicted in Connecticut state court in March 2018 of separate offenses (committed at separate times) of strangulation of his romantic partner and of possession of a weapon in a motor vehicle; and in April 2019 of selling heroin. On March 15, 2024, immigration officials took petitioner into custody, and removal

proceedings were initiated. On November 4, 2024, an immigration judge (IJ) denied petitioner's applications for withholding or deferral of removal to Jamaica under the Convention Against Torture (CAT), and the IJ ordered petitioner's removal. Petitioner appealed the denial of relief to the Board of Immigration Appeals (BIA).

Because of petitioner's convictions, he was subject to mandatory detention under 8 U.S.C. § 1226(c). Nevertheless, on February 11, 2025, a federal district judge in New York granted petitioner's habeas petition, ruling under Second Circuit law that due process required that petitioner receive an individualized bond hearing in immigration court, and ordering that petitioner receive such a hearing at which the Government bore the burden of justifying continued detention by clear and convincing evidence. *See Foster v. Brophy*, 2025 WL 833192 (W.D.N.Y. Feb. 11, 2025). A bond hearing was conducted, and on March 11, 2025, the IJ denied release on bond, finding that the Government had shown by clear and convincing evidence that petitioner both presented a danger to the community and posed a risk of flight. With respect to the issue of dangerousness, the IJ cited the serious nature and circumstances of petitioner's multiple criminal offenses, the fact that two of the offenses had been committed after petitioner's release on recognizance or bond pending other criminal charges, and petitioner's consistent refusal to accept responsibility for his actions.

On April 23, 2025, the BIA dismissed petitioner's appeal, concluding that the IJ had not erred in denying petitioner's application for deferral of removal to Jamacia under CAT. On May 16, 2025, petitioner appealed the BIA's decision by filing a petition for review (PFR) with the Second Circuit Court of Appeals, and in September 2025, the Second

Circuit granted petitioner's application for a stay of removal pending that court's ruling on the PFR (after previously granting a temporary stay).  Briefing was concluded on June 18, 2026, and the Second Circuit appeal remains pending.

On June 10, 2026, petitioner filed the instant habeas action.  The Court ordered briefing, respondents have filed an answer to the petition, and petitioner has filed a traverse; the matter is therefore ripe for ruling.

## II.    <u>Analysis</u>

To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2241(c)(3).  This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Petitioner seeks his release from custody, claiming that his detention under 8 U.S.C. § 1231(a)(2)(A) by immigration officials has become unreasonably indefinite under the framework established by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In the alternative, petitioner claims that his detention has been unreasonably prolonged and that his continued detention violates due process, whether he is presently being detained under Section 1231 or is still being detained under Section 1226(c).  Respondents argue that petitioner's detention is still governed by Section 1226(c) because his removal order is not yet final in light of his Second Circuit appeal, and that petitioner is not entitled to relief from mandatory detention under that statute.

3

### A.   *Basis for Detention*

Thus, the first issue for the Court is whether petitioner's detention is presently governed by Section 1231 or by Section 1226(c).  Section 1231 mandates detention of an alien during the removal period, which begins on the latest of the following dates:

(i)      The date the order of removal becomes administratively final.

(ii)     If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*See* 8 U.S.C. § 1231(a)(1)(B), (a)(2)(A).  The parties agree that provision (iii) of this statute does not apply here.  Respondents argue that provision (ii) governs here because petitioner has sought review of his removal order from the Second Circuit and that court has ordered a stay of removal.  Petitioner argues that his removal order became administratively final in November 2024, when the IJ ordered his removal and petitioner did not appeal that decision to the BIA (although he appealed the denial of CAT protection from removal to Jamaica); and that provision (ii) does not apply here because the Second Circuit is not reviewing the removal order, as he has appealed only the CAT denial.

The Court first addresses petitioner's argument that his removal order became administratively final after the IJ's ruling because although he appealed to the BIA the denial of CAT protection, he did not appeal the portion of the order mandating his removal. Petitioner has offered no authority to support this argument, however, other than to cite to the applicable regulation.  That regulation provides that an IJ's order of removal becomes

4

final (a) upon dismissal of an appeal by the BIA, (b) upon waiver of appeal by the alien, or (c) upon expiration of the appeal time if the alien does not file an appeal in that time (or on other dates in circumstances not present here). *See* 8 C.F.R. § 1241.1. If that regulation is applied strictly here, petitioner's removal order did not become administratively final until the BIA's dismissal of the appeal in April 2025, as petitioner did not waive appeal and did file an appeal with the BIA.[1] Moreover, in one of the cases cited by petitioner to support his argument that a removal order may be final while withholding-only litigation continues, the court expressly rejected petitioner's position here, in which the IJ ordered removal and denied relief in the same order, as follows:

> Note that this analysis [regarding the effect of a motion to reopen immigration proceedings after a final removal order in order to allow an application for CAT relief] does not impact the finality of an initial order of removal where withholding or deferral of removal is at issue; that removal order, by statute, does not become administratively final until the [BIA] has decided the case (or the time for appeal has expired), *even if the only matter in contention is withholding or deferral of removal*.

*See Le v. Horgan*, 2026 WL 482323, at *3 (N.D. Ind. Feb. 20, 2026) (emphasis added) (citing 8 U.S.C. § 1101(47)(B)); *see also* 8 U.S.C. § 1101(47)(B) (removal order becomes final upon a determination by the BIA affirming the order or the expiration of the appeal period). Thus, petitioner has not persuaded the Court that his removal order became administratively final at the time of the IJ's order despite his BIA appeal. Ultimately,

---

[1] In previous cases, this Court has ruled that an alien is not yet being detained under Section 1231 (and the *Zadvydas* framework thus does not yet apply) if he has appealed his removal order to the BIA to challenge a denial of an application for relief. *See, e.g.*, *Rivera v. United States Attorney General*, 2026 WL 2024489, at *1 (D. Kan. July 14, 2026) (Lungstrum, J.). No party has argued to this Court, however, the distinction between the ordering of removal and the denial of protection that petitioner argues here.

however, the Court need not decide this issue in this case, as there is no doubt that petitioner's removal order has now become administratively final, whether that occurred in November 2024 (at the time of the IJ's order) or in April 2025 (at the time of the BIA's affirmance of that order).

The Court therefore turns to petitioner's argument that Section 1231(a)(1)(B)(ii) does not apply here because the Second Circuit is not reviewing his "removal order." Petitioner has not cited any authority directly supporting that position in a case that, like this one, involved a single removal order and an appeal to a circuit court.  Petitioner relies on *Nasrallah v. Barr*, 590 U.S. 573 (2020), in which the Supreme Court held that 8 U.S.C. § 1252(a)'s prohibition of a circuit court's review of factual challenges to a "final order of removal" for certain criminal aliens does not preclude such a challenge to an immigration court's CAT order.  *See id.*  Petitioner is correct that the Supreme Court in *Nasrallah* concluded that a CAT order is distinct from a final order of removal, as the former does not affect or merge into the latter.  *See id.* at 582.  The Supreme Court was interpreting a different statute in that case (Section 1252(a)), however, and that statute's separate provisions permitting exclusive review in the circuit courts of CAT claims and final orders of removal support recognizing such a distinction in the context of applying that particular statute.  *See* 8 U.S.C. § 1252(a)(4), (5).

Somewhat inexplicably, petitioner has not also cited *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).  In *Johnson*, the Supreme Court held that Section 1231 (which mandates detention), not Section 1226 (which allows for bond hearings in some circumstances), governs the detention of an alien subject to an automatically reinstated

order of removal (after unauthorized reentry following removal) who then initiates withholding-only proceedings (including under CAT). *See id.* The Court cited *Nasrallah* in again distinguishing withholding-only proceedings (to determine *where* an alien may be removed) from the antecedent removal issue (determining *whether* an alien may be removed). *See id.* at 535-38 (citing, *inter alia*, *Nasrallah*, 590 U.S. at 582). *Johnson* is not dispositive here, however, because in that case the aliens were subject to prior orders of removal that were automatically reinstated and that could not be reopened, which the Supreme Court concluded did not lose their finality when the withholding-only proceedings were initiated, *see id.* at 539-40; while the present case involves a different provision of Section 1231 (involving circuit court review) and review of a single order that denies withholding and orders removal.[2]

The three district court cases relying on *Nasrallah* that petitioner cites in support of this argument are similarly distinguishable from the present case, as each court considered only a withholding-only BIA appeal and thus did not address Section 1231(a)(1)(B)(ii), the provision at issue here regarding circuit court review. *See Le*, 2026 WL 482323, at *2-4; *Chuol P.M. v. Garland*, 2022 WL 2442600, at *6-7 (D. Minn. Jan. 7, 2022), *report and recommendation rejected on other grounds*, 2022 WL 2302635 (D. Minn. June 27, 2022) (based on changed circumstances after completion of withholding-only appeals); *Toma v.*

---

[2] In *Johnson*, the Court also noted that the Government is free to remove an alien only after review of a removal order by the BIA or expiration of the appeal time. *See Johnson*, 594 U.S. at 534-35. The fact that the Government cannot act on a removal order while a BIA appeal is pending further undermines petitioner's argument, addressed above, that a removal order may become final before the BIA completes its review of a challenge to the IJ's denial of relief under CAT.

*Adducci*, 535 F. Supp. 3d 651, 655-58 (E.D. Mich. 2021). Two of those cases may be further distinguished by the fact that they involved CAT orders that were separate from the associated removal orders, while the present case involves a single removal order that also denied CAT protection. *See Le*, 2026 WL 482323, at \*2 (after final order of removal, proceedings were reopened to allow for withholding-only proceedings under CAT); *Chuol P.M.*, 2022 WL 2442600, at \*2-3 (BIA had already affirmed removal order before issuance of the CAT order appealed to the BIA). Accordingly, petitioner's cases are not particularly persuasive with respect to the issue in this case regarding the proper interpretation of Section 1231(a)(1)(B)(ii), which provision those cases did not address.

Moreover, one can make a good argument that this provision should be interpreted differently than those addressed by the Supreme Court. Provision (ii) ties the beginning of the removal period to judicial review of the removal order and a stay of the removal of the alien. *See* 8 U.S.C. § 1231(a)(1)(B)(ii). The stay requirement has been met here, as in this case the Second Circuit did not merely stay petitioner's removal to Jamaica, it stayed petitioner's removal generally. Thus it makes sense not to start the removal period and shift detention authority to Section 1231 while the Government is still unable to attempt to effect removal because of the stay.[3]

---

[3] In this case, detention is mandatory for petitioner under either Section 1231 or Section 1226(c). In most cases, however, the alien would more likely prefer that his or her detention remain governed by Section 1226, which generally allows for the possibility of release on bond – particularly if the alien is already out on bond during the appeal of the denial of CAT protection. Thus, petitioner's interpretation appears to be contrary to the interest of most aliens.

8

In opposing petitioner's argument that he is presently being detained under Section 1231, respondents have not addressed *Nasrallah* or *Johnson* or the cases cited by petitioner; nor have they cited any instance in which a court has addressed this precise issue involving the same circumstances. In the absence of controlling authority – or any persuasive authority – on that issue, the Court is hesitant to interpret the statute as urged by petitioner, for the reasons stated above. The Court need not decide the issue definitively, however, because petitioner has not shown that he is entitled to relief if he is deemed detained under either Section 1231 or Section 1226(c).

### B. *If Detained Under 8 U.S.C. § 1231*

Even if the Court were to agree with petitioner's position and deem him subject to detention under Section 1231, such that the *Zadvydas* framework could apply, it would nevertheless deny petitioner's claim that the Government has violated that statute by continuing to detain petitioner pending his removal.

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the 90-day removal period and that the Government may continue to detain an alien after that period or release the alien under supervision. *See Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2), (6)). The Supreme Court held, however, that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *See id.* at 699. The Court elaborated on that standard as follows:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should

9

hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.   . . .

We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters.  But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

*See id.* at 699-700 (citations omitted).   The Supreme Court then established a presumptively-reasonable detention period of six months in which to accomplish removal, after which the reasonableness of an alien's detention should be determined as follows:

After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*See id.* at 701; *see also, e.g.*, *Vargas v. Noem*, 2025 WL 2770679, at *2-3 (D. Kan. Sept. 29, 2025) (Lungstrum, J.) (applying this framework).

Respondents have not addressed the application of *Zadvydas* in this case at all, relying instead on their argument that Section 1231 does not apply here.  Petitioner notes that more than six months have passed since his removal order became administratively final in the immigration courts (measured from either possible date); and he argues that his

10

detention has become unreasonably prolonged and that his removal in the reasonably foreseeable future is not likely because the duration of his present Second Circuit appeal is unknown.

This Court has recently addressed a claim under *Zadvydas* in similar circumstances. In *S.E.C. v. Olson*, 2026 WL 1993217 (D. Kan. July 10, 2026) (Lungstrum, J.), the Court rejected a claim under *Zadvydas* by an alien whose removal had been delayed by her appeal of a denial of withholding of removal to a particular country. *See id.* at *1-2. The Court reasoned as follows:

> Petitioner has been detained for longer than six months. Nevertheless, the Court concludes that petitioner is not entitled to relief under *Zadvydas* for a violation of Section 1231(a), as her detention has not exceeded the period reasonably necessary to secure removal. Petitioner was detained for removal to a third country; the Government gave notice of its intent to remove her to Mexico; petitioner opposed removal to that country unsuccessfully in immigration court; she is now appealing that denial; and the Government is not able to proceed with any attempts to remove her while her application for relief remains pending with the BIA. Detention during such litigation is not unreasonably indefinite, as the proceedings that are preventing her removal will be resolved. This is not a case in which removal proceedings have concluded and the Government has been unable for a period of time to effect removal. Accordingly, detention still serves the purpose of securing petitioner's removal. As the Tenth Circuit and other federal circuits have concluded, delay caused by such legal proceedings does not make an alien's detention unreasonably indefinite under the *Zadvydas* standard. *See Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) (rejecting a claim under *Zadvydas* where the detention was neither indefinite nor potentially permanent, as the delay was associated with a challenge to a removal order that had a definite termination point); *G.P. v. Garland*, 103 F.4th 898, 902-03 (1st Cir. 2024) (following every circuit to have considered the issue in rejecting a *Zadvydas* challenge to post-removal-period detention during withholding-only proceedings) (citing cases).

*See id.* at *2 (footnote omitted).

11

Petitioner has not addressed the Court's holding in *S.E.C.*, even though that opinion was issued three days before petitioner filed his traverse. Nor has petitioner addressed the line of cases referenced in *S.E.C.*, in which circuit courts have concluded that withholding-only proceedings do not make an alien's detention unreasonably indefinite under *Zadvydas*. Petitioner did note that respondents had cited *Soberanes* in arguing that Section 1231 should not apply here, but he then stated that the Tenth Circuit had not considered Section 1231's application in that case. To the contrary, in *Soberanes* the Tenth Circuit directly confronted a claim under *Zadvydas*, which by definition is a claim that the alien's detention violates Section 1231. *See Soberanes*, 388 F.3d at 1311. The Tenth Circuit rejected the claim as follows:

> But for now, [the petitioner's] detention is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*; it is, rather, directly associated with a judicial review process that has a definite and evidently impending termination point, and thus, is more akin to detention during the administrative review process, which was upheld in *Demore v. Kim*, 538 U.S. 510, 527-29, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.").

*See id.* Even in one of the cases on which petitioner relies in arguing that Section 1231 applies here, the court noted that the pendency of an appeal regarding CAT relief "alone is not and cannot be the basis for finding that removal cannot be accomplished within a reasonable time" under *Zadvydas*, although it further noted that the Government had to show that removal "can be accomplished in the reasonably foreseeable future once the appeal concludes." *See Toma*, 535 F. Supp. 3d at 659.

In light of this Tenth Circuit authority and these other cases, the Court concludes that petitioner has failed to show that he would be entitled to relief under *Zadvydas*

12

(assuming he is presently being detained under Section 1231).  As in *S.E.C.*, the Government is not able to proceed with attempts to remove petitioner during this withholding-only appeal, and detention is not indefinite because the proceedings preventing removal will be completed.  Like *S.E.C.* and *Soberanes*, this case is not one in which removal proceedings have concluded and the Government has nevertheless been unable to effect removal.  Moreover, in the short window between the BIA's dismissal of petitioner's CAT appeal and the Second Circuit's initial stay of removal, immigration officials were able to obtain a travel document for petitioner from Jamaica; thus the Court cannot find that there is no significant likelihood of petitioner's removal in the reasonably foreseeable future once the Second Circuit appeal is concluded.  Accordingly, the Court denies petitioner's claim for a violation of Section 1231 under *Zadvydas*.

In the alternative, petitioner claims that his continued detention under either Section 1231 or Section 1226(c) violates due process.  He has not cited any authority, however, addressing a due process claim by a petitioner detained under Section 1231 who is not entitled to relief under *Zadvydas*.  This Court rejected just such a claim in *S.E.C.*, as follows:

> The Tenth Circuit has not decided whether a petitioner detained under Section 1231 may assert such a claim under due process despite failing to show an entitlement to relief under *Zadvydas*.  The Court agrees with the Fourth Circuit, however, that if a petitioner cannot satisfy the Supreme Court's test from *Zadvydas*, there is no due process violation except in an exceptional case, and that that standard is not met in the case of a petitioner whose detention has been extended because of withholding-only proceedings in the immigration courts and not because of bad-faith or dilatory conduct by the Government.  *See Castaneda v. Perry*, 95 F.4th 750, 760-62 (4th Cir. 2024).  Again, in this case petitioner's detention is still justified by the proper

13

purpose of securing removal, and that detention has not become unreasonably prolonged in light of that purpose.

*See S.E.C.*, 2026 WL 1993217, at *3.  For the same reasons, petitioner has not shown that his detention under Section 1231 violates due process, and the Court therefore denies that claim.

### C.      *If Detained Under 8 U.S.C. § 1226(c)*

Petitioner's due process claim fares no better if he is deemed to be presently detained under Section 1226(c).  As petitioner notes, this Court has applied a multi-factor balancing test in considering due process claims by criminal aliens detained under Section 1226(c).  *See, e.g.*, *Soto Vilchez v. Blanche*, 2026 WL 1978620, at *2-3 (D. Kan. July 9, 2026) (Lungstrum, J.).  The Court has considered the following factors in such cases:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*See, e.g.*, *Nguyen v. Carter*, 2026 WL 522650, at *2 (D. Kan. Feb. 25, 2026) (Lungstrum, J.).

Petitioner argues that those factors weigh in his favor to justify his release from custody.  In such cases, however, the Court has not considered outright release as appropriate relief; rather, the test has been applied to determine whether continued detention without an individualized determination and the possibility of release on bond would violate due process, and the Court has therefore considered whether the petitioner be granted a bond hearing.  *See, e.g.*, *Nguyen*, 2026 WL 522650 (granting relief in the form

14

of a bond hearing).   Petitioner has not explained why the Court should now consider petitioner's outright release from detention under Section 1226(c), particularly in light of his extensive criminal history.

In addition, petitioner *has* already received the process contemplated by the Court under this test, as he was granted a bond hearing after his prior habeas case.   Petitioner has not shown that his mandatory detention under Section 1226(c) without another hearing since that time violates due process under this multi-factor test on which he relies. Applying those factors here:   first, he has been detained 16 months since the prior bond denial; second, although the duration of his present detention pending the Second Circuit appeal is unknown, there is a definite endpoint to those proceedings, and petitioner has not shown that proceedings on remand are likely;[4] third, the conditions of petitioner's present confinement are not unreasonably harsh; fourth and fifth, some period of delay in the removal proceedings and appeals may be attributed to petitioner's requests for extensions, and the Court is not persuaded that the Government has caused any such delays;[5] and sixth, petitioner's eventual removal is not only likely, is it assured, as petitioner (as he has stressed) has not challenged the portion of the removal order finding him subject to removal.   These facts are not as compelling as those in cases in which the Court has granted relief under this test, and the Court concludes that application of these factors do not show a due process violation in this case.   *See Soto Vilchez*, 2026 WL 1978620, at *3 (rejecting

---

[4]  Petitioner has not explained why he is likely to prevail in his appeal to the Second Circuit.

[5]  Petitioner argues that the Government has *attempted* to delay proceedings, but he has not shown that the Government was successful in those efforts.

a due process claim under a similar consideration of the factors).  Accordingly, the Court denies petitioner's due process claim, and the petition is therefore denied in its entirety.

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **denied**.

IT IS SO ORDERED.

Dated this 23rd day of July, 2026, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge

16